UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELINDA BENTON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:17-cv-39

## OPINION

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

    Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

# **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation

omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 38 years of age on her alleged disability onset date. (PageID.308). She successfully completed high school and worked previously as an office manager. (PageID.103-04). Plaintiff applied for benefits on July 30, 2013, alleging that she had been disabled since January 1, 2012, due to post-traumatic stress disorder (PTSD), chronic depression, spinal stenosis, and spondylosis. (PageID.43, 308-18, 331, 338). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.212-303).

On May 6, 2015, Plaintiff appeared before ALJ Nicholas Ohanesian with testimony being offered by Plaintiff and a vocational expert. (PageID.39-75). In a written decision dated June 12, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.92-105). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.80-85). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.[1]

Plaintiff alleges that on September 23, 2016, she submitted another claim for SSI

---

[1] Plaintiff's insured status expired on September 30, 2002. (PageID.94). Accordingly, to be eligible for DIB benefits, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

benefits which was granted on December 16, 2016. (ECF No. 13 at PageID.1021, 1048). Plaintiff argues that this subsequent grant of benefits "provides evidence to support [her] original Title II claim." (ECF No. 13 at PageID.1021). The grant of a subsequent application for disability benefits, however, is not relevant on the question whether the decision to deny a previous application for benefits is supported by substantial evidence. *See, e.g., Allen v. Commissioner of Social Security*, 561 F.3d 646, 654 (6th Cir. 2009) (subsequent grant of benefits may be based upon changed circumstances and/or evidence not before the prior ALJ and, therefore, is not relevant to assessment of prior ALJ's decision); *Atkinson v. Astrue*, 2011 WL 3664346 at *16 (E.D.N.C., July 20, 2011) (same). This is especially true, here, where Plaintiff's insured status for DIB benefits expired several years before the time period relevant to Plaintiff's September 23, 2016 application for SSI benefits.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) fibromyalgia; (2) degenerative disc disease; (3) post-traumatic stress disorder; and (4) a depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.94-97).

With respect to Plaintiff's residual functional capacity, the ALJ determined that

---

determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally balance, stoop, kneel, crouch, and crawl; (3) she can have frequent exposure to extremes of heat, humidity, and cold; (4) she is limited to performing simple, routine, and repetitive tasks with occasional contact with the public, co-workers, or supervisors; (5) she cannot perform production rate or pace work; and (6) she is limited to jobs involving no more than one change in job duties per week. (PageID.97).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 135,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.66-71). This represents a significant number of jobs. *See Born v.*

*Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff additionally required a sit/stand option, there still existed approximately 42,000 jobs in the state of Michigan which Plaintiff could perform consistent with her RFC. (PageID.73). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.         **The ALJ's Credibility Assessment is Supported by Substantial Evidence**

At the administrative hearing, Plaintiff testified that she was far more limited than the ALJ determined in his RFC assessment. For example, Plaintiff testified that "there are days where [she] can't take a shower" because of "panic attacks." (PageID.52). Plaintiff testified that she often cannot watch television because "there's some commercials that upset me and disrupt my emotions." (PageID.54). Plaintiff reported that, except for weekly doctor's appointments, she does not leave her house. (PageID.55). Plaintiff reported that the trauma of learning she was adopted caused her to experience debilitating, work preclusive symptoms. (PageID.59-62). Plaintiff reported that she experiences debilitating headaches several times weekly as well as constant pain, tingling, and numbness from "head to toe." (PageID.62-66). The ALJ found that Plaintiff was not entirely credible and, accordingly, discounted her subjective allegations. (PageID.100-01). Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir.,

7

Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

In discounting Plaintiff's subjective allegations, the ALJ observed that such were contradicted by the medical evidence. A review of the record supports the ALJ's conclusion.

9

Treatment notes dated August 26, 2011, indicate that Plaintiff exhibited "normal" strength, "normal" motor and sensory function, and "no neurological deficits." (PageID.624). X-rays of Plaintiff's lumbar spine, taken October 27, 2011, were "normal." (PageID.625-26).

The results of a November 14, 2011 examination revealed 5/5 strength with no neurologic abnormalities. (PageID.636). Patrick's maneuver was negative.[3] (PageID.636). An MRI of Plaintiff's lumbar spine revealed the presence of a bulging disc at L5-S1 without nerve root compression. (PageID.636). The doctor concluded that Plaintiff was experiencing "low back pain with no radicular component" for which "conservative measures" were recommended. (PageID.636). Plaintiff's disc bulge was treated with injection therapy which provided "significant relief." (PageID.640).

The results of a January 4, 2012 physical examination were unremarkable, although it was noted that Plaintiff was taking more pain medication than she was prescribed. (PageID.639). Treatment notes dated May 1, 2012, indicate that Plaintiff's back pain improved with physical therapy. (PageID.709). X-rays of Plaintiff's lumbar spine, taken June 29, 2012, revealed a "mild" loss of disc space, but were otherwise unremarkable. (PageID.683). The results of an August 8, 2012 examination revealed "no abnormalities to explain [Plaintiff's] symptoms." (PageID.701).

---

[3] FABER (or Patrick) test is "a screening test for pathology of the hip joint or sacrum." *See* Special Tests of the Lower Extremity, available at http://physicaltherapy.about.com/od/orthopedicsandpt/ss/LEspecialtests_2.htm (last visited on November, 21, 2017). The test is performed by placing the patient in the supine position and then flexing one leg and placing the foot of that leg on the opposite knee. The tester then slowly presses down on the superior aspect of the tested knee joint lowering the leg into further abduction. The motion performed as part of this test is referred to as FABER - **F**lexion, **AB**duction, **E**xternal **R**otation at the hip. The results are positive if the patient experiences "pain at the hip or sacral joint, or if the leg can not lower to point of being parallel to the opposite leg." *Id.*

An MRI of Plaintiff's lumbar spine, performed on January 3, 2013, revealed the absence of "any signs of significant disc herniations or nerve root impingement." (PageID.758-59). X-rays of Plaintiff's thoracic spine, taken the same day, were "unremarkable." (PageID.752). Multiple physical examinations between August 2012 and October 2013 revealed normal reflexes and range of motion, with no weakness or sensory deficit. (PageID.800-01, 804-05, 812-17, 833-34).

Plaintiff participated in physical therapy from August 2014 through December 2014. (PageID.860-92). On August 15, 2014, Plaintiff reported her pain as 0 on a scale of 1-10. (PageID.860). Treatment notes dated August 28, 2014, indicate that Plaintiff was "progressing well." (PageID.868). On October 13, 2014, Plaintiff reported that she "feels stronger" and "is exercising when she used to not be able to." (PageID.869). Plaintiff reported her pain as 0 on a scale of 1-10. (PageID.869). Plaintiff also reported that she was experiencing "minimal" difficulty with activities of daily living. (PageID.876). On December 1, 2014, Plaintiff reported that she was "doing very well" and recently went hunting. (PageID.883).

With respect to Plaintiff's non-exertional impairments, Plaintiff reported in early 2013 that she was experiencing depression and trauma after learning she was adopted and that her husband "had a child by another woman." (PageID.765-67). Treatment notes indicate, however, that Plaintiff made "significant improvement" with medication and counseling. (PageID.765-94, 842-54).

This evidence is substantial and supports the ALJ's conclusion that Plaintiff's subjective allegations of debilitating physical and emotional impairments are not consistent with the record. The ALJ also noted that Plaintiff's failure to take her pain medication as prescribed

indicated that she was motivated by secondary gain rather than actual "disabling symptoms." (PageID.100-01). This conclusion is likewise supported by substantial evidence.

In February 2012, Plaintiff was discharged from care by Michigan Pain Consultants for noncompliance with pain medication usage. (PageID.638). Plaintiff acknowledged that she had twice received pain medication from an emergency room and also obtained a pain medication prescription from another physician. (PageID.638). In July 2013, Plaintiff's husband accused Plaintiff of being addicted to pain medication. (PageID.789). In July 2014, when confronted with the fact that she was having her prescriptions filled at multiple pharmacies, Plaintiff asserted that she did this because the first pharmacy "did not have enough medication," thus necessitating that she have the remainder of the prescription filled at a different pharmacy. (PageID.985, 988). Plaintiff also accused her husband of stealing her pain medications. (PageID.985, 988). In sum, the ALJ's reasons for discounting Plaintiff's subjective allegations are supported by substantial evidence. Accordingly, this argument is rejected.

**II.        The ALJ Properly Evaluated the Opinion Evidence**

Several of Plaintiff's care providers expressed opinions or completed form reports regarding Plaintiff's ability to function. Plaintiff argues that she is entitled to relief on the ground that the ALJ failed to accord these opinions sufficient weight and also failed to provide a sufficient basis for discounting such.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent

with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As is well recognized, the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at*

14

*the time he rendered his opinion.*"

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07. The requirement that the ALJ provide good reasons when affording less than controlling weight to a care provider's opinion applies only where the care provider qualifies as a "treating physician." *See, e.g., Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 378 F.3d at 545, *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007).

A. Dr. Bobga Fomoung

On February 17, 2014, Dr. Fomoung completed a form report regarding Plaintiff's functional ability. (PageID.855-58). The doctor reported that he met with Plaintiff once monthly for "medication management." (PageID.855). Dr. Fomoung reported that Plaintiff suffers "disabling" depression, but failed to identify any specific functional limitations which Plaintiff allegedly experiences. (PageID.855-58). Plaintiff's reliance on this information fails to advance her cause.

First, the form that Dr. Fomoung completed does not constitute a "medical opinion" to which deference must be accorded. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your

15

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014) (where "check-box forms" are unaccompanied by explanation, treatment notes, or other evidence, ALJ properly rejected such). The doctor did not articulate any functional limitations for Plaintiff, but instead simply asserted the conclusion that Plaintiff is disabled. However, the determination whether a claimant is disabled is a matter reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Second, to the extent Dr. Fomoung's conclusion is interpreted as asserting the opinion that Plaintiff is limited to a greater extent than the ALJ recognized, such is not supported by the medical evidence as the discussion above reveals.

B. Amy Byerly, Ph.D.

On April 27, 2015, Dr. Byerly completed a form report regarding Plaintiff's functional ability. (PageID.1004-07). The doctor reported that Plaintiff was unable to work, but failed to identify any specific functional limitations which Plaintiff allegedly experiences. (PageID.1004-07). Plaintiff's reliance on this item fails. First, as discussed above, completion of the form in question does not constitute a "medical opinion" to which deference must be accorded. Second, a review of the form in question reveals that Dr. Byerly relied heavily on Plaintiff's subjective allegations which, as discussed in the preceding section, are properly discounted. Finally, to the extent Dr. Byerly's conclusion is interpreted as asserting the opinion that Plaintiff is limited to a greater extent than the ALJ recognized, such is not supported by the medical evidence as the discussion above reveals.

16

C. Lorraine Harper, LMSW

Plaintiff began counseling with Lorraine Haroer on January 3, 2013. (PageID.765-66). Following this initial session, Ms. Harper reported Plaintiff's GAF score as 41-50.[4] (PageID.766). Plaintiff faults the ALJ for failing to accord appropriate deference to this particular GAF score. GAF scores, however, do not constitute medical opinions. While the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir., Feb. 9, 2006) (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)). Thus, Plaintiff's claim fails because she has failed to identify any medical opinion to which the ALJ failed to properly defer. Moreover, even if the ALJ were required to consider a claimant's GAF score, the argument that Plaintiff is more limited than the ALJ recognized is contradicted by the evidence of record.

D. Dr. Patricia Seiler

Plaintiff has failed to identify any opinion offered by Dr. Seiler that Plaintiff is impaired to a greater extent than the ALJ recognized. Accordingly, this argument is rejected.

---

[4] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 49 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

**III.     Plaintiff is not Entitled to a Sentence Six Remand**

Plaintiff asserts that she first presented to the Appeals Council additional evidence that was not presented to the ALJ.  (PageID.112-210). Plaintiff argues that the Appeals Council erred by failing to consider this evidence.  Plaintiff has also submitted to this Court evidence which was likewise not presented to the ALJ.  (ECF No. 13 at PageID.1041-46).

This Court is precluded from considering this evidence.  *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).   If Plaintiff can demonstrate, however, that the evidence in question is new and material, and that good cause existed for not presenting it to the ALJ, the Court can remand the case for further proceedings during which this new evidence can be considered.  *See, e.g., Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence.  *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).   Plaintiff bears the burden of making these showings.  *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In assessing the evidence in question and declining to reverse the ALJ's decision, the Appeals Council stated that:

> The Administrative Law Judge decided your case through June 12, 2015.  This new information is about a later time.  Therefore, it does not effect the decision about whether you were disabled beginning on or before June 12, 2015 [the date of the ALJ's decision].

(PageID.81).

The Court agrees with this assessment. The evidence in question concerns Plaintiff's impairments and circumstances well after the date of the ALJ's decision. Moreover, even assuming this evidence supports the conclusion that Plaintiff's circumstance deteriorated following the ALJ's decision, the evidence in question neither supports nor suggests that any such deterioration occurred prior to June 12, 2015. Accordingly, Plaintiff is not entitled to a Sentence Six remand for the consideration of this evidence.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: December 12, 2017           /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge